```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROBERT SMITH                    :      CIVIL ACTION
                                :
           v.                   :
                                :
PHILADELPHIA HOUSING            :
AUTHORITY, et al.               :      NO. 12-329
```

<u>MEMORANDUM</u>

McLaughlin, J.                                    August 9, 2012

            This case arises out of Robert Smith's employment by
the Philadelphia Housing Authority ("PHA") and working conditions
he experienced at a construction site ("Hill Creek"), in
Philadelphia.  The plaintiff brought claims against the PHA; its
executive director, Carl Greene; the City of Philadelphia
("City"); the United Brotherhood of Carpenters and Joiners of
America, Local 8 ("Local 8" or the "Union"); and its executive
secretary, Edward Coryell.  Smith and the City stipulated to the
dismissal, without prejudice, of all claims against the City.
The remaining defendants have moved to dismiss all claims against
them.  The Court will grant the motions and dismiss all claims
with prejudice except Count I as brought against the Union, which
will be dismissed without prejudice.  The plaintiff may file an
amended complaint as to Count I within thirty days of this
decision.

I.   <u>Background</u>

            The plaintiff alleges that he was exposed to asbestos

and other harmful materials while working at Hill Creek, and that his complaints regarding exposure were ignored by the Union, PHA, and their officials.  The plaintiff also litigated his work-related injuries in a workers' compensation hearing, which the Court discusses below.

    A.   <u>Facts as Alleged in the Amended Complaint</u>

      The plaintiff has been a member of Local 8 since 1984. The Union has a collective bargaining agreement with the City. Smith was employed by the PHA from March 2009 until January 22, 2010, and paid $24.50 per hour.  Am. Compl. ¶¶ 17-19.

      At some point during that period, Smith was assigned to work at Hill Creek.  During that assignment he "frequently encountered what he believed to be friable asbestos and/or other similarly harmful and dangerous substances."  He came into contact with and breathed in that material, including on one occasion where a "colleague[] caused the asbestos or other similarly harmful and dangerous substance to become airborne and to rain down on" Smith.  <u>Id.</u> ¶¶ 21-23.

      Smith repeatedly raised concerns regarding these materials to Local 8 and the PHA, but those concerns went unaddressed, and an unidentified person "told [him] to keep quiet and keep working and that his complaints were harmful to the Union . . . ."  He was not given protective equipment or warnings related to the harmful materials.  The plaintiff began

to suffer severe respiratory problems, "causing him to be removed from work" on January 22, 2010.  Id. ¶¶ 24-26, 28, 29.

Smith also alleges that the Union and PHA agreed to pay $24.50 per hour for PHA work instead of $37.40, which was the "contractual rate of pay for a union carpenter of Philadelphia." Smith learned through Patrick Gillespie, who he alleges was Local 8's head of building trades, that the "deal" made between the Union and PHA was secret and would result in layoffs of union members if it was revealed.  Id. ¶ 27.

The plaintiff alleges that Local 8, the PHA, Greene, and Coryell were all aware of the hazards present at the Hill Creek facility and "deliberately chose not to remove [him] and/or his colleagues from the unhealthy environment" there, and "specifically agreed to conceal the facts relating to asbestos exposure."  Id. ¶ 30.

B.   Workers Compensation Hearing

The plaintiff brought a claim for workers compensation for injuries he sustained while working at Hill Creek.  He testified before a workers' compensation judge ("WCJ") at two hearings.  Smith's supervisor and a co-worker testified at the hearings, and medical depositions were presented by the PHA and by Smith.

In that proceeding, the WCJ found that Smith had not met his burden of showing that he suffered from asbestos-related

-3-

disease or needed medical monitoring given his exposure to asbestos, and found that none of his current respiratory problems related to asbestos exposure.  The WCJ did find that Smith experienced occupational asthma related "exposure to airborne dust and other irritants during his employment at PHA."  He was awarded disability benefits in the amount of $569.38 per week from January 25, 2010 "through the present" (the WCJ's decision itself is undated but its cover letter shows that it was circulated on April 18, 2011) and the PHA was ordered to pay medical expenses related to Smith's asthma.

The WCJ explicitly did not "make any factual determinations as to [asbestos disposal], as to whether the workers' jobs were threatened if they did not directly handle the asbestos, or whether PHA violated any governmental rule or environmental regulations."  PHA Mot. Ex. C at 9, 10.

### C. Claims in the Amended Complaint

Count I alleges that the Union and PHA "breached their duty of care by knowingly requiring [him] . . . to handle asbestos."  Id. ¶ 43.  Count I has been withdrawn as against the PHA.  Pl. Opp. to PHA Mot. 8.  The plaintiff has clarified that Count I, as against the Union, alleges a breach of the duty of fair representation.  Pl. Opp. to Union Mot. 6.

Count II is brought under the Labor-Management Reporting and Disclosure Act ("LMRDA") against the Union and

-4-

Coryell and is premised on allegations that they suppressed or ignored the plaintiff's concerns regarding asbestos exposure.

Count III, as articulated in the Amended Complaint, alleges violations of the First, Fifth, and Fourteenth Amendments by the PHA and Union and is brought under 42 U.S.C. §§ 1983 and 1986.  At oral argument on August 9, 2012, plaintiff's counsel conceded that Smith's constitutional claims sound in violations of substantive due process.

Count IV is brought against Carl Greene under Sections 1983 and 1986 and alleges that Greene violated Smith's constitutional rights "in his official capacity and in an individual capacity as the Executive Director of the PHA and a policymaker at PHA responsible for formulating, creating, promulgating, implementing, and enforcing . . . a de facto or de jure policy, custom, or practice" to do so.  Am. Compl. ¶ 63.

II.  Discussion

Separate motions to dismiss have been filed by the Union and Coryell; by Greene; and by the PHA.  Each of these movants seeks dismissal of all claims brought against them.  The Court will grant the motions.  The plaintiff has withdrawn, as against the PHA, Count I in its entirety and Count III to the extent it alleges violations of Section 1986.  The plaintiff withdrew Count I as against Coryell at oral argument because a claim for breach of the duty of fair representation does not

-5-

allow for individual liability.  With respect to the remaining claims, the Court will dismiss all claims against all movants with prejudice except Count I as brought against the Union, which the Court will dismiss without prejudice.

    A.   <u>Collateral Estoppel</u>

      As a threshold matter the PHA argues that collateral estoppel bars all claims brought against it because Smith already raised his claims for work-related injuries against the PHA in an earlier workers' compensation hearing.  PHA Mot. Ex. C at 10.

      Collateral estoppel, or issue preclusion, "prevents parties from relitigating an issue that has already been actually litigated." <u>Peloro v. United States</u>, 488 F.3d 163, 174 (3d Cir. 2007).  To be applied, four elements must be met: (1) issue identity; (2) actual litigation of that issue; (3) a valid and final judgment; and (4) the issue being essential to that judgment.  The PHA argues that the factual finding that the plaintiff suffered no asbestos-related injury, being essential to the WCJ's judgment, bars the instant suit against it.

      Following withdrawal of Count I against the PHA, the only claim brought against the PHA is Count III, which is under Section 1983.  "By the plain terms of § 1983, two--and only two-- allegations are required in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must

-6-

allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  A plaintiff need not show that actual injury has occurred in order to recover under Section 1983.  Carey v. Piphus, 435 U.S. 247, 266 (1978).

Smith does not appear to have raised constitutional claims in his workers' compensation hearing.  The issue of whether he suffered injury, though perhaps conclusive as a factual matter in this litigation, is not required for him to recover under Section 1983.  The Court does not decide whether collateral estoppel applies here because the plaintiff fails to state any constitutional claim against the PHA, as discussed below.

B.   Duty of Fair Representation Against Union (Count I)

Count I, styled as "Breach of Duty," has been withdrawn against the PHA, and has been clarified as a claim for breach of the duty of fair representation against Local 8 and Coryell.  It has been withdrawn against Coryell.[1]  To recover on a claim for the breach of duty of fair representation, the plaintiff must prove that (a) an employer's action violated the terms of a

---

[1] A claim for breach of the duty of fair representation may not be brought against an individual, but only is directed properly at a union as an entity.  Atkinson v. Sinclair Refining Co., 370 U.S. 238, 247-48 (1962).

collective-bargaining agreement; and (b) the union breached its
duty of fair representation to its member.  DelCostello v. Int'l
Brotherhood of Teamsters, 462 U.S. 151, 163-65 (1983).  The
plaintiff has alleged that preventing asbestos exposure was part
of the CBA.  Am. Compl. ¶ 42.  At oral argument, however, Smith's
counsel acknowledged that he has not seen the CBA, and counsel
for the Union stated that a copy was available at Local 8's union
hall for inspection at any time.

        The second element is met where the union's behavior is
so "discriminatory, dishonest, arbitrary, or perfunctory" as to
work a breach of duty.  DelCostello, 462 U.S. at 165 (citing Vaca
v. Sipes, 386 U.S. 171, 190-91 (1967)).  When an employee raises
a meritorious grievance but it is arbitrarily ignored by his
union, he states a claim for a breach of the duty of fair
representation.  Vaca, 386 U.S. at 191.  At oral argument,
however, Smith's counsel acknowledged that Smith has never filed
a grievance, and that he could not identify any portion of the
collective bargaining agreement that had been breached by Smith's
employer because he had not inspected that document.  In light of
Smith's failure to identify any breach of the CBA by the PHA,
this count will be dismissed without prejudice to the plaintiff's
ability to file an amended pleading addressing that issue.  The
plaintiff should also consider whether the CBA imposes any
requirement that he exhaust grievance procedures before bringing

an action in federal court.

C.   <u>Labor-Management Reporting & Disclosure Act</u>

This claim is brought against the Union and Coryell and is connected with the alleged suppression of Smith's asbestos complaints.  The LMRDA protects the right to free speech in the union context and provides a cause of action to those whose rights are so infringed.  29 U.S.C. §§ 411(a)(2), 412.  At oral argument plaintiff's counsel argued that Smith's free speech rights were violated because although he voiced his concerns regarding asbestos exposure, Patrick Gillespie (whose affiliation with the Union is disputed) told the plaintiff that he was lucky to have a job, and that he should "keep quiet and keep working."

Whether a cause of action will lie under this statute "must be judged by reference to the LMRDA's basic objective: 'to ensure that unions [are] democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections.'" <u>Sheet Metal Workers Inern. Ass'n v. Lynn</u>, 488 U.S. 347, 354-55 (1989) (quoting <u>Finnegan v. Leu</u>, 456 U.S. 431, 441 (1982)).  Even if the plaintiff's right to speak freely on asbestos issues was infringed, he has not alleged that it "had a direct impact on the democratic governance of the union itself," which is central to the analysis under the United States Court of Appeals for the Third Circuit's interpretation of <u>Lynn</u>. <u>Ross v. Hotel Employees & Restaurant Employees Intern. Union</u>, 266

F.3d 236, 252 (3d Cir. 2001).

At oral argument counsel asserted that the plaintiff had raised serious concerns that affected all union members that his complaint thus came within the scope of the LMRDA.  The plaintiff's allegations are in no way tied to union governance or electoral issues.  The plaintiff does not allege that he was prevented from speaking or otherwise disciplined (or threatened with discipline) for exercising those rights.  See Finnegan, 456 U.S. at 436-38 (unlawful to discipline for exercise of rights under the LMRDA).  Count II will therefore be dismissed with prejudice.

D.  Constitutional Claims

The plaintiff alleges in Count III that his constitutional rights under the First, Fifth, and Fourteenth Amendments were violated by the actions of the PHA and Union, in violation of 42 U.S.C. §§ 1983 and 1986.  The plaintiff states in opposition to the Union's motion that he is withdrawing his "Section 1985 and 1986 claims" against the Union.[2]  Count IV is brought against Greene for violations of Sections 1983 and 1986. The movants argue that the claims asserted in Count III and IV

---

[2] Although neither Count III nor Count IV states that a violation of Section 1985 is alleged, the parties acknowledge that Section 1986 is premised on an underlying violation of Section 1985, and that both sections require an underlying cognizable constitutional violation to proceed.

must be dismissed because the plaintiff has not alleged facts
that rise to a cognizable constitutional claim.

The plaintiff's constitutional claims are based in his
assertions that he was required to work under conditions
dangerous to his health and that the defendants agreed to
downplay or conceal the nature of those conditions.  He conceded
at oral argument that the basis for these claims is a violation
of substantive due process.  The defendants argue that there is
no independent constitutional duty requiring provision of a safe
workplace, citing Collins v. City of Harker Heights, Texas, 503
U.S. 115 (1992).

The plaintiff attempts to distinguish Collins, arguing
that the defendants here consciously concealed a known danger.
Collins is on all fours with the instant suit.  In Collins, the
plaintiff had argued that the defendant municipality was
deliberately indifferent to her husband's exposure to sewer gas
that ultimately killed him.  The Court rejected the claim as
analogous to a state-law tort claim, and found that the
plaintiff's claims were not cognizable under the Constitution.
503 U.S. at 128.  The plaintiff's arguments that his factual
allegations go beyond those made in Collins ignore the clear
import of that case, which involved allegations of a conscious
practice of failing to warn about known hazards.  The Collins
Court acknowledged that the plaintiff's allegations were indeed

-11-

serious, but stated that the Constitution does not "guarantee municipal employees a workplace that is free of unreasonable risk of harm." See also Kaucher v. Cnty. of Bucks, 455 F.3d 418, 424-27 (3d Cir. 2006) (concluding that prison's conduct in creating and misrepresenting the risks of infection in suit by a guard did not shock the conscience, despite plaintiffs' argument that their claim was not solely based on working conditions).

The movants argue that the Section 1986 claims (for failure to prevent Section 1985 violations) cannot survive without a properly pled claim under Section 1985(3), which prohibits conspiracies to deprive a person of equal protection under the law. See Marino v. Bowers, 657 F.2d 1363, 1371 (3d Cir. 1981) (Section 1985 "merely provides a remedy for violation of the rights it designates"). The plaintiff concedes that these claims are predicated upon the same alleged constitutional deprivations as the Section 1983 claim. See Compl. ¶ 56; Pl. Opp. to PHA Mot. 9. Because the plaintiff has not pled an underlying constitutional violation, Counts III and IV will be dismissed in their entirety. Count IV is also independently dismissible for failure to allege the personal involvement of Greene in any alleged constitutional violation; individuals may not be held liable under Section 1983 on the basis of respondeat superior. Monell v. Dept. of Social Servs., 463 U.S. 659, 691-95 (1978); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

Cir. 1988).

An appropriate order will issue separately.